No. 92-090

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

EMPIRE LATH & PLASTER, INC.,

      Plaintiff and Respondent,

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA,

      Defendant and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Richard J. Andriolo, Berg, Lilly,
Andriolo & Tollefsen, Bozeman, Montana

      For Respondent:

            P. Bruce Harper, Attorney at Law,
Billings, Montana

Submitted on Briefs:  May 28, 1992

Decided:  February 11, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant American Casualty Company of Reading, Pennsylvania (American Casualty), appeals from a default judgment of $58,049.40, entered in favor of Empire Lath & Plaster, Inc. (Empire) on November 6, 1991, in the Thirteenth Judicial District Court, Yellowstone County. American Casualty's subsequent motion to set aside the judgment was deemed denied pursuant to Rule 60(c), M.R.Civ.P., when the District Court failed to rule on the motion within 45 days.

We affirm.

The sole issue for our consideration is whether the District Court abused its discretion when it did not grant American Casualty's motion to set aside the default judgment.

This litigation arises out of a construction contract associated with the building of the Billings Parking Garage and City Hall Expansion Project. In April 1990, the City of Billings awarded the general contract for the construction project to C & D Contractors, Inc. (CD), and CD thereafter subcontracted a portion of the project to Empire. In connection with the general contract, a bond in excess of $3 million was executed by American Casualty to guarantee payment to subcontractors for labor, material, and equipment supplied during the construction project.

Empire completed its portion of the work on April 16, 1991, and submitted its final billing statement to CD which reflected an unpaid balance due Empire totalling $47,124.96. In addition to the amount owed under the subcontract, Empire had performed a "change

2

order" for the project which had been authorized by CD and approved by the project architect, at a cost of $1,200.00.

At the same time Empire submitted its final statement, CD sent a letter to Empire confirming the outstanding balance due under the contract, but asserting that Empire had failed to "diligently pursue its work in a timely manner." CD claimed this failure to properly perform under the contract delayed the entire project and resulted in significant additional costs to CD. No further facts nor specifics were ever provided to Empire in regard to the alleged contract breach.

After computing the costs which it alleged were a result of Empire's delay, CD determined it would withhold $31,576.00, and tendered a check to Empire for $15,548.96. The check contained a restrictive endorsement which provided that Empire's endorsement would acknowledge final and conclusive payment for all work performed, and would release CD from any further liability under the subcontract. Empire refused to execute the check due to the restrictions, and insisted on either full payment, or payment of the uncontested sum of $15,548.96, with an understanding that the parties would attempt to resolve the dispute over the remaining amount.

Empire received no payments from CD, and on July 2, 1991, Empire submitted a notice to the City of Billings, CD, and American Casualty (as the surety for the project), stating that it had a claim of $47,124.96 against the bond for the work performed under the subcontract, and also for the $1,200.00 incurred for the change

3

order. Empire received no response from either CD or American Casualty regarding the claim notice.

On August 14, 1991, Empire filed a complaint in District Court against American Casualty in order to collect the outstanding balance owed to Empire which was guaranteed by the bond. This civil action was filed in Yellowstone County as required by provisions contained in the bond; CD was not named as a defendant in the case because the subcontract between CD and Empire required venue in Lewis and Clark County. The summons and complaint were served on American Casualty's legal department on August 23, 1991.

The Claims Analyst for American Casualty immediately forwarded the summons and complaint to CD, along with a letter tendering the defense of the action to CD as was apparently standard practice. Although American Casualty was in communication with CD on other matters, Empire's pending lawsuit was never discussed, and CD asserts that it had no knowledge of the action nor ever received American Casualty's letter tendering the defense of the action to CD.

The District Court, based on an affidavit from the supervising architect of the construction project, found that Empire had fully and competently performed the requirements of the subcontract in a timely manner, and that there was no basis to withhold full payment to Empire. The court concluded that Empire had complied with all conditions required by the bond, and was, therefore, entitled to recover from American Casualty under the bond. The court entered a default judgment against American Casualty on November 6, 1991,

for $58,049.40, which represented the contract amount due Empire, plus interest, the $1,200.00 incident to the change order, and attorney fees and costs of $170.39.

The following day, American Casualty discovered that the default judgment had been entered and that no appearance had been made by CD on behalf of the surety. On November 14, 1991, American Casualty moved to set aside the default judgment, filed its answer to the complaint, and requested a trial on the merits. The District Court did not rule on the motion within 45 days from the time it was filed, and the motion was, therefore, deemed denied pursuant to Rule 60(c), M.R.Civ.P. From this denial of the motion to set aside the default judgment, American Casualty appeals.

The issue presented is whether the District Court abused its discretion when it did not set aside the default judgment. American Casualty argues that the court should have granted relief from the judgment under Rule 55(c), M.R.Civ.P., which allows for the setting aside of a default judgment:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Rule 60(b), M.R.Civ.P., states in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment.

Where a trial court fails to grant a motion to set aside a default judgment, the finding of even a slight abuse of discretion

is sufficient to justify reversal of such an order. *Board of Directors Edelweiss Owners' Assn. v. McIntosh* (1991), 251 Mont. 144, 822 P.2d 1080. In *Lords v. Newman* (1984), 212 Mont. 359, 363, 688 P.2d 290, 293, we emphasized two basic tenets to be considered in setting aside default judgments: (1) every litigated case should be tried on its merits and judgments by default are not favored; and (2) trial courts have a certain amount of discretion when considering a motion to set aside a default judgment. We have also clearly stated that the burden of proof rests on the party seeking to set aside the default judgment. *Siewing v. Pearson Co.* (1987), 226 Mont. 458, 461, 736 P.2d 120, 122.

After considering these factors and applying the appropriate standard of review to the present case, we conclude that the District Court did not abuse its discretion when it failed to grant American Casualty's motion.

American Casualty contends that the failure to file an answer was excusable neglect, and it is, therefore, entitled to relief from the judgment pursuant to Rule 60(b), M.R.Civ.P. However, in *In re Marriage of Castor* (1991), 249 Mont. 495, 817 P.2d 665, we emphasized that "mistake," inadvertence," and "excusable neglect" generally require some justification for an error beyond mere carelessness or ignorance of the law. *Castor,* 817 P.2d at 667 (citing *Lomas and Nettleton Co. v. Wiseley* (7th Cir. 1989), 884 F.2d 965, 967). In this instance, we conclude that American Casualty's

6

neglect was not justified and that the criteria of Rule 60(b) have not been satisfied.

The bonding company asserts that it was standard practice to have CD take over the defense of actions filed against American Casualty. American Casualty then maintains that after notifying CD, the claims analyst kept the complaint with other active files because she was purportedly monitoring negotiations between Empire and CD. This resulted in the normal calendaring procedure being overlooked and, consequently, American Casualty did not check to see that a timely response had been filed. Furthermore, CD claims it never received the tender letter, and attributes this to the fact that CD was moving its offices and reducing office personnel at the time the letter was sent.

Based on *Blume v. Metropolitan Life Insurance Company* (1990), 242 Mont. 465, 791 P.2d 784, where this Court found the district court abused its discretion when it refused to vacate a default judgment, American Casualty suggests the neglect in this situation is also inadvertent and excusable. In *Blume*, certified mail containing a summons and complaint was delivered to the defendant company, but was apparently lost before anyone in a position of authority saw it. After reviewing the record in this case, however, we conclude that the neglect demonstrated by both American Casualty and CD is not comparable to the inadvertence we excused in *Blume*.

Unlike *Blume*, where the defendant company was unaware that the plaintiff was seriously considering filing suit and had no reason

7

to suspect that a court appearance was necessary, neither American Casualty nor CD can profess ignorance of Empire's intention to pursue recovery under the bond. When Empire refused to execute the check for $15,548.96 because acceptance of this check would have released CD from further liability under the subcontract, CD was fully aware that Empire was challenging the unilateral withholding of payments. Empire then complied with the required notice provisions prior to filing its complaint, thus giving both American Casualty and CD written notice of its claim against the bond and intent to seek recovery.

The record shows that American Casualty was put on notice that Empire would assert its rights under the bond directly against the bonding company a minimum of five times prior to the filing of the complaint, and unlike the defendant in *Blume*, the appropriate personnel did receive a copy of the summons and complaint. While it may have been reasonable to assign CD the responsibility of responding to Empire's complaint, American Casualty cannot justify its failure to follow-up on the matter. This is particularly true in light of the following statement made in the August 27, 1991 tender letter:

> Please acknowledge your acceptance of this tender of defense prior to the answer date and furnish the undersigned with a copy of the answer.

As the only defendant named in the case, American Casualty had the responsibility to follow-up on its own request and insure that CD received and accepted the tender, and was preparing an appearance on American Casualty's behalf.

8

The neglect demonstrated in this case was not like the unintentional oversight in *Blume*, and is, therefore, not excusable.

In addition to finding excusable neglect, the judgment of a district court can be set aside for "any other reason justifying relief from the operation of the judgment." Rule 60(b)(6), M.R.Civ.P. Generally, relief is afforded under this subsection only in extraordinary situations when circumstances go beyond those covered specifically in Rule 60(b). *Castor*, 817 P.2d at 668; *Fuller v. Quire* (6th Cir. 1990), 916 F.2d 358, 360. After reviewing the record, we conclude that American Casualty has failed to establish any other reason which would justify relief from the operation of the default judgment.

We hold the District Court did not abuse its discretion when it did not grant the motion to set aside the judgment entered against American Casualty.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9