JUSTICE McKINNON
specially concurs.
¶24 It is my opinion that the District Court correctly found that the Temporary Restraining Order was a valid court order — having never been vacated by a subsequent court order — and that the District Court correctly applied the equitable principles enunciated in Briese v. Montana Public Employees’ Retirement Board, 2012 MT 192, 366 Mont. 148, 285 P.3d 550.1 believe the Court errs in concluding, under the authority of M. R. Civ. P. 4(t)(1), that the TRO was “ineffective” after May 28, 2011.[1] Opinion, ¶ 16. In reaching this conclusion, the Court necessarily imposes an automatic dismissal, without a court order, on any action beyond the three-year timeframe. We thus ignore that the TRO was a valid court order which had not been vacated or modified by a subsequent court order and similarly ignore precedent which specifically states that the language in Rule 4(t) does not “constitute mandatory language.” Pesarik v. Perjessy, 2008 MT 337, ¶ 17, 346 Mont. 236, 194 P.3d 665 (construing former Rule 4E).
¶25 The Court appears not to comprehend the slippery slope it has created. In concluding that the TRO was “ineffective,” Opinion, ¶ 16, we are authorizing a litigant to disregard a valid court order anytime, in the litigant’s judgment, the three-year deadline has passed. Such an interpretation is inconsistent with not only Rule 4(t), requiring the court to dismiss an action (which can only be by court order), but also with M. R. Civ. P. 6(b), allowing for extensions of time even after time has expired, and M. R. Civ. P. 41, setting forth when and how an action is to be dismissed. As an example of the uncertainty created by our decision we need only look to the domestic violence statutes. Pursuant to § 45-5-626, MCA, when a defendant has actual knowledge of the order of protection and is thus bound by the order even though not served, the Court’s interpretation of M. R. Civ. P. 4(t) would allow the *371 defendant — who is perhaps evading service — to expect an automatic dismissal after three years. This dismissal would come without consideration by a district judge of whether the defendant had knowledge ofthe order and its content and without consideration of the underlying circumstances which apparently warranted the need for protection of the victim in the first instance.
¶26 To begin, the significance of the order issued in this case must be recognized. Section 40-4-121(3), MCA, states: “When the clerk of the district court issues a summons pursuant to this chapter [governing termination of marriage, child custody, and support], the clerk shall issue and include with the summons a temporary restraining order” which restrains the parties “from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property ... without either the consent of the other party or an order of the court ...” (Emphases added.) The statute requires that the clerk include the temporary restraining order with the summons that the clerk issues. Section 40-4-121(3), MCA. The validity of the order is not diminished by the manner in which the Legislature has declared that the order be issued. It remains enforceable as an order of the court despite being generated by the clerk. Briese, ¶ 31 (“A temporary restraining order issued under the broad restriction of [§ 40-4-121(3), MCA] prohibits a party’s attempt to change one of those designated beneficiaries during the proceeding.”).
¶27 Significantly, § 40-4-121(9), MCA, states that a temporary restraining order issued pursuant to § 40-4-121(3), MCA, must conspicuously bear the language: “Violation of this order is a criminal offense under45-5-220 or 45-5-626.” Notably, the forms that this Court provides for self-represented litigants in divorce cases bear such notice.[2] The applicable statutory provision for violation of a temporary restraining order states:
A person commits the offense of violation of an order of protection if the person, with knowledge of the order, purposely or knowingly violates a provision of any order provided for in 40-4-121 or an order of protection under Title 40, chapter 15. It may be inferred that the defendant had knowledge of an order at the time of an offense if the defendant had been served with the order before the time of the offense. Service of the order is not *372 required upon a showing that the defendant had knowledge of the order and its content.
Section 45-5-626(1), MCA (emphases added). The Courtis reasoning is inconsistent. Although the Court observes that “[t]he TRO terminates upon order of the court or when the petition for dissolution of marriage is voluntarily dismissed,” Opinion, ¶ 11 (citing § 40-4-121(9Xb), MCA), we ignore the plain language of these statutory sections requiring that the order remain in effect until a further order of the court or dismissal. See also M. R. Civ. P. 41. To hold as we do that the TRO was not effective on William, who undisputedly had actual knowledge of its terms, is contrary to these statutory provisions and the general principle that orders of the court may not be ignored.
¶28 This Courtis jurisprudence regarding Rule 4(t) has contained numerous contradictions and “about-faces.” Cynthia Ford, Does It Have to Be This Hard? Rule 41(e) in Montana, 60 Mont. L. Rev. 285, 286 (1999) (discussing former Rules 4 and 41(e)). We partially came to terms with these contradictions in Pesarik and specifically refused to apply a mandatory interpretation to the language of the rule. Pesarik, ¶ 17. We reversed the district court for automatically dismissing an action and instead concluded that other rules, specifically Rule 6(b)(2), allowed for a district court to enlarge the time period for service of process. Pesarik, ¶ 19. An automatic dismissal or deemed ineffective interpretation placed on Rule 4(t) by the Court undermines Pesarik, if not directly contravenes its holdings, and needlessly confuses an area of law already difficult for practitioners and litigante. See Ford, supra, at 286.
¶29 Our decision to give no effect to a court order which has not been served within the three-year timeframe and to deem it automatically ineffective or dismissed is similarly at odds with rules regarding the dismissal of actions. Rule 41(a) provides that the only manner in which an action may be dismissed without a court order is when there has not been an answer or motion for summaiy judgment filed by the opposing party. Consistent with Rule 4(f), Rule 41(2) requires that all other dismissals must be by court order.
¶30 Rule 4(t)(l) provides:
A plaintiff must accomplish service within three years after filing a complaint. Absent an appearance by defendants), the court, upon motion or on its own initiative, must dismiss an action without prejudice if the plaintiff fails to do so.
A significant part of the rule’s provisions, omitted from the Court’s analysis, is the absence of any appearance by defendants). An *373 automatic dismissal would preclude any consideration by a trial court of whether, in fact, a defendant has made an appearance. This area of law is not always clear and is often a matter in dispute. Our interpretation of Rule 4(t) today would allow for an automatic dismissal when the issue of whether a defendant has made an appearance should be resolved on the merits.
¶31 The Court faults the District Court for failing to issue an order dismissing the separate dissolution action at the summary judgment healing on November 14,2013. Opinion, ¶ 16. The Court concludes in the instant probate proceeding that the separate dissolution action should have been dismissed for failure to perfect service by May 28, 2011. Opinion, ¶ 16. The Court presumably would require the District Court to issue an order on November 14,2013, dismissing an action as of May 28, 2011 — two years earlier — and further, assumes that the order would be binding on the parties. Apparently, the Court makes such a finding even though, undisputedly, no party would be served with the order or have actual notice of its terms on May 28, 2011. Indeed, one party is not even capable of receiving service, because he is deceased.
¶32 Finally, I am not opposed to the consideration of Rule 4(t) in applying the equitable principles adopted in Briese. It is my view that the District Court properly observed both Rule 4(t) and Briese here. See Briese, ¶ 40 (the violation of a restraining order does not automatically void a beneficiary change; courts have authority to grant some form of relief through use of their powers of equity). The District Court determined that this case did not involve a party violating a restraining order during the pendency of an active dissolution proceeding and that the three-year period for accomplishing service had expired, thus subjecting the proceeding to dismissal without prejudice. M. R. Civ. P. 4(t)(l).
¶33 I would thus find that the TRO was a valid court order which had not been vacated or modified by a subsequent court order. I would apply the equitable principles enunciated in Briese, as did the District Court, to conclude that William’s beneficiaiy designation should not be voided. I would not interpret Rule 4(t) to require an automatic dismissal without a court order since to do so is in direct contravention to other rules of procedure and our precedent. I specially concur.

 The Court’s analysis strays, I believe, when we attempt to define a court order as either “effective” or “ineffective.” A court order may have an effective date, but the use of the term “ineffective” is imprecise and not accurate. A court order is enforceable until vacated or modified by a subsequent court order, statute, or law. If does not become “ineffective” by some process of evolution, osmosis, or the like. To the extent I have used the term “ineffective” in this special concurrence, it is a reference to the Court’s terminology.

 These are presently accessible at http://courts.mt.gov/library/topic/end_ marriage.mcpx.